Ashley E. Littlefield (SBN 281027)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel: (415) 439-1400 / Fax: (415) 439-1400
ashley.littlefield@kirkland.com

Craig S. Primis, P.C. (admitted *pro hac vice*)
K. Winn Allen, P.C. (admitted *pro hac vice*)
Ronald K. Anguas, Jr. (admitted *pro hac vice*)
Katherine H. Epstein (admitted *pro hac vice*)
James Y. Xi  (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:  (202) 389-5000 / Fax: (202) 389-5200
cprimis@kirkland.com
winn.allen@kirkland.com
ronald.anguas@kirkland.com
kate.epstein@kirkland.com
james.xi@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc.
and Mark Zuckerberg*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DONALD J. TRUMP, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Defendants. | Case No. 4:21-cv-09044-JSW<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .......................................................................... 1

STATEMENT OF ISSUES AND REQUESTED RELIEF ................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

BACKGROUND ........................................................................................................... 2

LEGAL STANDARD ..................................................................................................... 3

ARGUMENT ................................................................................................................. 3

I.      Plaintiffs' First Amendment Claim Should Be Dismissed Because Meta Is Not A State Actor. ............................................................................................................. 3

     A.      Plaintiffs' Compulsion Theory Fails As A Matter of Law. ........................... 5

     B.      Section 230 Does Not Transform Private Conduct Into State Action. ......... 8

     C.      Plaintiffs' Joint Action Theory Fails As A Matter Of Law. ...................... 10

II.     Plaintiffs' Declaratory Judgment Claim Should Be Dismissed. ............................ 12

III.    Plaintiffs' Claim Under the Florida Deceptive and Unfair Trade Practices Act Should Be Dismissed. ...................................................................................................... 13

IV.    Plaintiffs' Claim Under Florida's New Social-Media Law Should Be Dismissed. ................ 16

V.     Section 230 Alternatively Bars Plaintiffs' State Law Claims. ............................... 17

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu-Jamal v. Nat'l Pub. Radio*,
   1997 WL 527349 (D.D.C. Aug. 21, 1997) ...............................................................5

*Am. Freedom Def. Initiative v. Lynch*,
   217 F. Supp. 3d 100 (D.D.C. 2016) ......................................................................12

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S. 40 (1999) ..............................................................................5, 6, 7, 9

*Ark. Writers' Project, Inc. v. Ragland*,
   481 U.S. 221 (1987) ..................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................3

*Atkinson v. Meta Platforms, Inc.*,
   2021 WL 5447022 (9th Cir. Nov. 22, 2021) .........................................................4, 8

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .........................................................................18

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ......................................................................9, 13

*Belknap v. Alphabet, Inc.*,
   504 F. Supp. 3d 1156 (D. Or. 2020) ....................................................................5

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ....................................................................................9

*Brittain v. Twitter, Inc.*,
   2019 WL 2423375 (N.D. Cal. June 10, 2019) ...........................................................18

*Brock v. Zuckerberg*,
   2021 WL 2650070 (S.D.N.Y. June 25, 2021) .............................................................5

*Buckley v. Valeo*,
   424 U.S. 1 (1976) .....................................................................................17

*Buentello v. Boebart*,
   2021 WL 2588856 (D. Colo. June 24, 2021) ..............................................................6

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ................................................................18

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*,
   827 F.2d 1291 (9th Cir. 1987) ................................................................................7

*Children's Health Def. ("CHD") v. Facebook Inc.*,
   2021 WL 2662064 (N.D. Cal. June 29, 2021) ..................................5, 6, 7, 8, 10, 11

*Collins v. Womancare*,
   878 F.2d 1145 (9th Cir. 1989) ........................................................................10, 11

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ..........................................................................................11

*Daniels v. Alphabet Inc.*,
   2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ..........................................5, 7, 18

*Davison v. Facebook, Inc.*,
   370 F. Supp. 3d 621 (E.D. Va. 2019) ....................................................................5

*DeHoog v. Anheuser-Busch InBev SA/NV*,
   899 F.3d 758 (9th Cir. 2018) ................................................................................6

*Divino Grp. LLC v. Google LLC*,
   2021 WL 51715 (N.D. Cal. Jan. 6, 2021) ........................................................5, 8, 13

*Doe v. Google LLC*,
   2021 WL 4864418 (N.D. Cal. Oct. 19, 2021) ..........................................4, 7, 8, 10, 11

*Ebeid v. Facebook, Inc.*,
   2019 WL 2059662 (N.D. Cal. May 9, 2019) ............................................................5

*Fed. Agency of News LLC v. Facebook, Inc.*,
   395 F. Supp. 3d 1295 (N.D. Cal. 2019) ..................................................................5

*Fed. Agency of News LLC v. Facebook, Inc.*,
   432 F. Supp. 3d 1107 (N.D. Cal. 2020) ..................................................................5

*Flagg Bros., Inc. v. Brooks*,
   436 U.S. 149 (1978) ............................................................................................9

*Freedom Watch, Inc. v. Google Inc.*,
   816 F. App'x 497 (D.C. Cir. 2020) ........................................................................4

*Fyk v. Facebook, Inc.*,
   2019 WL 11288576 (N.D. Cal. June 18, 2019) ......................................................18

*Gallagher v. Neil Young Freedom Concert*,
   49 F.3d 1442 (10th Cir. 1995) ............................................................................10

*Green v. America Online, Inc.*,
   318 F.3d 465 (3d Cir. 2003)................................................................................13

*Hassen v. State Farm Mut. Auto. Ins. Co.*,
   674 So. 2d 106 (Fla. 1996)..................................................................16

*Heineke v. Santa Clara Univ.*,
   965 F.3d 1009 (9th Cir. 2020) ......................................................4, 6

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020)........................................................................11

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
   515 U.S. 557 (1995)...........................................................4, 15, 17

*Jackson v. Metropolitan Edison Co.*,
   419 U.S. 345 (1974)............................................................................9

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .............................................................8

*King v. Facebook, Inc.*,
   2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ....................................18

*Kirtley v. Rainey*,
   326 F.3d 1088 (9th Cir. 2003) ...........................................................10

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .............................................................2

*La'Tiejira v. Facebook, Inc.*,
   272 F. Supp. 3d 981 (S.D. Tex. 2017) .................................................4

*Langdon v. Google, Inc.*,
   474 F. Supp. 2d 622 (D. Del. 2007)....................................................4

*Lewis v. Google LLC*,
   461 F. Supp. 3d 938 (N.D. Cal. 2020) ..............................................12

*Lewis v. Google LLC*,
   851 F. App'x 723 (9th Cir. 2021) ..........................................4, 12, 13

*Librizzi v. Ocwen Loan Servicing, LLC*,
   120 F. Supp. 3d 1368 (S.D. Fla. 2015) ..............................................15

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982)............................................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................12

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019)....................................................................3, 4

*Mathis v. Pac. Gas & Elec. Co.*,
   75 F.3d 498 (9th Cir. 1996) ................................................................7

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007).........................................................................12

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974).......................................................................4, 17

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
   460 U.S. 575 (1983).........................................................................17

*NetChoice, LLC v. Moody*,
   2021 WL 2690876 (N.D. Fla. June 30, 2021) .........................4, 15, 16, 17

*NetChoice, LLC v. Paxton*,
   2021 WL 5755120 (W.D. Tex. Dec. 1, 2021) ..........................4, 15, 16, 17

*Newman v. Google LLC*,
   2021 WL 2633423 (N.D. Cal. June 25, 2021) ................................5, 8, 13

*NIFLA v. Becerra*,
   138 S.Ct 2361 (2018)........................................................................15

*O'Handley v. Padilla*,
   2022 WL 93625 (N.D. Cal. Jan. 10, 2022)...........................4, 11, 14, 15

*Ohno v. Yasuma*,
   723 F.3d 984 (9th Cir. 2013) ...........................................................6, 10

*Palomino v. Facebook Inc.*,
   2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ............................................14

*Pasadena Republican Club v. W. Just. Ctr.*,
   985 F.3d 1161 (9th Cir. 2021) ............................................................10

*Prager Univ. v. Google LLC*,
   951 F.3d 991 (9th Cir. 2020) ...........................................................1, 4

*Rayburn ex rel. Rayburn v. Hogue*,
   241 F.3d 1341 (11th Cir. 2001) ............................................................9

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982)............................................................................9

*Roberts v. AT&T Mobility LLC*,
   877 F.3d 833 (9th Cir. 2017) ................................................................9

*Roca Labs, Inc. v. Consumer Opinion Corp.*,
   140 F. Supp. 3d 1311 (M.D. Fla. 2015)................................................18

*Rutenburg v. Twitter, Inc.*,
    2021 WL 1338958 (N.D. Cal. Apr. 9, 2021) ..................................................................5

*Sescey v. YouTube*,
    2021 WL 5399916 (E.D. Pa. Nov. 18, 2021) ................................................................4

*Sikhs for Justice "SFJ", Inc v Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ......................................................................18

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ......................................................................................7

*TwoRivers v. Lewis*,
    174 F.3d 987 (9th Cir. 1999) ....................................................................................16

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ..................................................................................................13

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................................................................14

*Winter v. Facebook, Inc.*,
    2021 WL 5446733 (E.D. Mo. Nov. 22, 2021) ............................................................13

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ....................................................................................................3

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ..................................................................................8, 9

*Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ..........................................................................4

*Zhou v. OutFront Media*,
    2020 WL 9037147 (N.D. Cal. May 26, 2020) ............................................................8

*Zimmerman v. Facebook, Inc.*,
    2020 WL 5877863 (N.D. Cal. Oct. 2, 2020) ..............................................................5

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ................................................................................15

**Statutes**

28 U.S.C. § 2201(a) ............................................................................................................12

47 U.S.C. § 230 ........................................................................................................... *passim*

47 U.S.C. § 230(b) ..............................................................................................................9

47 U.S.C. § 230(c)(1)............................................................................................18

Fla. Stat. § 501.204(1)..........................................................................................15

Fla. Stat. § 501.2041(2)(b)...........................................................................2, 3, 16

**Rules**

Rule 9(b) ...............................................................................................................15

Rule 12(b)(6)...........................................................................................................1

1

**NOTICE OF MOTION AND MOTION**

2

PLEASE TAKE NOTICE that Defendants Meta Platforms, Inc., ("Meta") and Mark

3

Zuckerberg move to dismiss Plaintiffs' First Amended Complaint with prejudice pursuant to Federal

4

Rule of Civil Procedure 12(b)(6).  The motion is based on this Notice of Motion, the Memorandum of

5

Points and Authorities, and the annexed Declaration of Michael Duffey ("Duffey Decl.").

6

**STATEMENT OF ISSUES AND REQUESTED RELIEF**

7

Meta requests that the Court dismiss Plaintiffs' claims with prejudice.

8

**MEMORANDUM OF POINTS AND AUTHORITIES**

9

Donald J. Trump and seven other plaintiffs filed this putative class action lawsuit alleging that

10

Meta and its CEO violated the First Amendment by suspending plaintiffs' Facebook accounts and

11

removing their posts.  The Amended Complaint suffers from a host of problems, but chief among its

12

flaws is that it fails to allege the requisite state action.  "[T]he First Amendment prohibits the

13

government—not a private party—from abridging speech."  *Prager Univ. v. Google LLC*, 951 F.3d

14

991, 996 (9th Cir. 2020).  Meta and its CEO are private parties.  While some private parties may be

15

treated as state actors in limited circumstances, numerous courts—including at least a dozen in this

16

District—have held that Meta and companies like it are not state actors for First Amendment purposes.

17

Plaintiffs do not identify any novel theory for why this case should turn out differently.  Instead, they

18

present the same arguments that courts have rejected repeatedly.

19

Plaintiffs' other claims fare no better.  Plaintiffs seek a declaratory judgment that Section 230

20

of the Communications Decency Act is unconstitutional, but they lack Article III standing to do so.

21

And in all events, Plaintiffs identify no valid basis for striking down Section 230 because the statute

22

restricts no speech.  Indeed, every other court to have considered such a challenge has rejected it

23

outright.  Plaintiffs also allege that Defendants violated the Florida Deceptive and Unfair Trade

24

Practices Act, but that claim is barred by the choice-of-law provision in Meta's Terms of Service as

25

well as the First Amendment.  Plaintiffs' conclusory allegation that Defendants deceived consumers

26

by promising "objective, uniform standards" also fails to state a claim on its own terms.  Finally,

27

Plaintiffs allege that Defendants violated the recently enacted (and recently enjoined) Florida Senate

28

Bill 7072, which requires certain social media platforms to "apply censorship, deplatforming, and

shadow banning standards in a consistent manner," Fla. Stat. § 501.2041(2)(b).  But that law took effect on July 1, 2021—months after the editorial decisions that Plaintiffs challenge.  And as another court has correctly recognized, Senate Bill 7072 violates the First Amendment and is preempted.  For these reasons and those that follow, the Court should dismiss Plaintiffs' First Amended Class Action Complaint, ECF No. 16 ("Am. Compl.") with prejudice.

## BACKGROUND

Meta Platforms, Inc. operates a variety of online services and applications, including Facebook.  Facebook users can share content on the service and interact with content posted by other users.  Am. Compl. ¶ 32.  That content is diverse and substantial: it is generated by billions of users located throughout the world, uploaded in a variety of media formats, and spans substantively the entire range of human thought.  *See id.* ¶¶ 2, 31

Meta has invested significant resources into developing rules and standards to moderate the user-created content on its service.  While Meta "want[s] people to be able to talk openly about the issues that matter to them," it also recognizes that "the internet creates new and increased opportunities for abuse."  *Community Standards*, Duffey Decl., Ex. A.[1]  It therefore restricts several categories of content.  Meta prohibits, for example, content that "incites or facilitates serious violence," *Violence and Incitement*, Duffey Decl., Ex. B, or "praises, substantively supports, or represents … violent events," *Dangerous Individuals and Organizations*, Duffey Decl., Ex. D.  And it reduces the distribution of "content rated false by independent fact-checkers."  *False News*, Duffey Decl., Ex. F.  Those policies are explained in Facebook's Community Standards, which users agree to abide by under Facebook's Terms of Service.

Plaintiffs are Facebook users who allege that Meta suspended their accounts and removed their content.  They commenced this putative class action against Meta and its CEO, Mark Zuckerberg (collectively, "Meta").  Count 1 of the Amended Complaint alleges that Meta violated Plaintiffs' First Amendment rights.  Am. Compl. ¶¶ 187-204.  Count 2 seeks a declaration that Section 230 of the

---

[1] A court may consider materials incorporated by reference in a complaint when evaluating a motion to dismiss.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Meta's Terms of Service and Community Standards are incorporated by reference in the Amended Complaint.  *See* Am. Compl. ¶¶ 41-45.

Communications Decency Act is unconstitutional.  *Id.* ¶¶ 205-16.  Count 3 alleges that Meta violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by representing that Meta applies "objective, uniform standards by which content may be censored."  *Id.* ¶¶ 217-32.  Count 4 alleges that Meta violated Florida Senate Bill 7072, 2021 Leg. (Fla. 2021), a law enacted in May 2021 (and preliminarily enjoined a month alter) that requires certain social media services to "apply censorship, deplatforming, and shadow banning standards in a consistent manner," Fla. Stat. § 501.2041(2)(b).  *See* Am. Compl. ¶¶ 233-45.  Plaintiffs seek damages and injunctive relief, including an injunction ordering Meta to restore their accounts and their content, and imposing a court-appointed monitor to oversee Meta's future editorial decisions.  *Id.* ¶ 232.  Plaintiffs filed their Amended Complaint in the Southern District of Florida, which transferred the case to this Court.  Because the Amended Complaint fails to state a claim, Meta now moves to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint's factual allegations must support "a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

## ARGUMENT

## I.   PLAINTIFFS' FIRST AMENDMENT CLAIM SHOULD BE DISMISSED BECAUSE META IS NOT A STATE ACTOR.

Plaintiffs' First Amendment claim fails because Meta is a private entity.  The First Amendment "prohibits only *governmental* abridgment of speech," not "*private* abridgment of speech."  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).  As the Supreme Court has explained, when "a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment."  *Id.* at 1930.  Rather, the First Amendment generally *protects* a private entity's ability to exercise editorial judgment over the speech and speakers in the forum.  That is because the First Amendment protects "both the right to speak freely and the right to refrain from speaking at all."  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  Just as the government may not compel private parties to disseminate its own preferred message, the government may not compel one private speaker to

disseminate the message of another private speaker. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573-74 (1995); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Numerous courts have applied those principles to hold that online services like Meta's Facebook platform cannot be forced to disseminate speech against their will. *See, e.g.*, *O'Handley v. Padilla*, 2022 WL 93625, at *13-15 (N.D. Cal. Jan. 10, 2022); *NetChoice, LLC v. Paxton*, 2021 WL 5755120, at *7 (W.D. Tex. Dec. 1, 2021), *appeal docketed* No. 21-51178 (5th Cir.); *NetChoice, LLC v. Moody*, 2021 WL 2690876, at *8-9 (N.D. Fla. June 30, 2021), *appeal docketed* No. 21-12355 (11th Cir.); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-92 (S.D. Tex. 2017); *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 440-41 (S.D.N.Y. 2014); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007).

Plaintiffs do not and cannot allege that Meta is a state actor. Courts "begin with the presumption that private conduct does not constitute governmental action." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020) (quotation marks omitted). That presumption may be overcome in just "a few limited circumstances," such as when a private actor performs a "traditional, exclusive public function," when the government "compels the private entity to take a particular action," and when the government "acts jointly with the private entity." *Halleck*, 139 S. Ct. at 1928. None of those exceptions applies here, but Plaintiffs nevertheless argue that Meta is a governmental actor under three theories. First, they contend Meta's decision to suspend their accounts and remove their content is state action because certain elected officials pressured it to do so. Second, Plaintiffs claim that Congress encouraged Meta to suspend their accounts and remove their content by passing Section 230 of the Communications Decency Act. And third, they claim that Meta acted jointly with the Centers for Disease Control and Prevention ("CDC") to suspend their accounts and remove certain content related to COVID-19. Courts in this District (and others) have rejected each of those theories many times over, including with respect to Meta and companies like it.[2] There is no reason for a different outcome here.

---

[2] *See, e.g.*, *Atkinson v. Meta Platforms, Inc.*, 2021 WL 5447022 (9th Cir. Nov. 22, 2021); *Lewis v. Google LLC*, 851 F. App'x 723 (9th Cir. 2021), *cert. denied* 142 S. Ct. 434 (2021); *Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020); *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497 (D.C. Cir. 2020), *cert. denied*, 141 S. Ct. 2466 (2021); *O'Handley v. Padilla*, 2022 WL 93625 (N.D. Cal. Jan. 10, 2022); *Sescey v. YouTube*, 2021 WL 5399916 (E.D. Pa. Nov. 18, 2021); *Doe v. Google*

### A.   Plaintiffs' Compulsion Theory Fails As A Matter of Law.

The key question under the government compulsion test is "whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (citation omitted).  Plaintiffs argue that Meta's decision to suspend their accounts and remove their posts was state action because various members of Congress pressured Meta to do so.  Am. Compl. ¶¶ 67-80.  That argument fails for two reasons.

*First*, Plaintiffs cannot rely on statements from individual members of Congress to turn private decisions into state action.  *See, e.g.*, Am. Compl. ¶¶ 3, 71.  The cases that have considered this theory have squarely rejected it.  *See Daniels*, 2021 WL 1222166, at *7; *Abu-Jamal v. Nat'l Pub. Radio*, 1997 WL 527349, at *6 (D.D.C. Aug. 21, 1997), *aff'd*, 159 F.3d 635 (D.C. Cir. 1998).  In *Daniels*, the plaintiff argued that statements from Speaker Nancy Pelosi and statements and letters from Congressman Adam Schiff coerced Google into removing the plaintiff's videos about COVID-19 vaccines.  The court rejected that argument, explaining that the "publicly expressed views of individual members of Congress—regardless of how influential"—cannot be the basis for finding state action because individual legislators lack "legal control over defendants' actions."  *Daniels*, 2021 WL 1222166, at *6.  Similarly, in *Abu-Jamal*, the court rejected the argument that remarks by members of Congress pressuring NPR to cancel the plaintiff's program rendered NPR's decision state action, reasoning that none of those members possessed any "legal control" over NPR's actions.  1997 WL

*LLC*, 2021 WL 4864418 (N.D. Cal. Oct. 19, 2021), *appeal docketed* No. 21-16934 (9th Cir.); *Children's Health Def. ("CHD") v. Facebook Inc.*, 2021 WL 2662064 (N.D. Cal. June 29, 2021), *appeal docketed*, No. 21-16210 (9th Cir.); *Newman v. Google LLC*, 2021 WL 2633423 (N.D. Cal. June 25, 2021); *Brock v. Zuckerberg*, 2021 WL 2650070 (S.D.N.Y. June 25, 2021), *appeal docketed* No. No. 21-1796 (2d Cir.); *Rutenburg v. Twitter, Inc.*, 2021 WL 1338958 (N.D. Cal. Apr. 9, 2021), *appeal docketed* No. No. 21-16074 (9th Cir.); *Daniels v. Alphabet Inc.*, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021); *Divino Grp. LLC v. Google LLC*, 2021 WL 51715 (N.D. Cal. Jan. 6, 2021); *Belknap v. Alphabet, Inc.*, 504 F. Supp. 3d 1156 (D. Or. 2020); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020); *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863 (N.D. Cal. Oct. 2, 2020), *appeal dismissed*, 2020 WL 9257959 (9th Cir.); *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295 (N.D. Cal. 2019); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621 (E.D. Va. 2019), *aff'd*, 774 F. App'x 162 (4th Cir.), *cert. denied*, 140 S. Ct. 1111 (2020); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662 (N.D. Cal. May 9, 2019).

527349, at \*4-6.  The same reasoning applies here, and Plaintiffs cannot rely on statements from individual members of Congress to turn Meta's editorial decisions into state action.

This conclusion and the decisions that support it accord with broader principles of the state action doctrine.  The key question in state action cases is whether private conduct "may be fairly attributable *to the State*."  *Sullivan*, 526 U.S. at 51 (emphasis added).  But "individual members" of Congress, "unlike executive branch officials, generally do not have the authority to act on behalf of the state." *Buentello v. Boebart*, 2021 WL 2588856, at \*4 (D. Colo. June 24, 2021); *see also id.* at \*5 ("Congress, not its individual members, commands the federal government, and it is that body that the First Amendment sought to constrain.").  It would therefore make little sense to attribute a private party's action to the government based on a handful of statements from individual members of Congress.  This case illustrates the point.  While some members of Congress arguably wanted Meta to suspend Mr. Trump from its service and to remove certain posts about COVID-19, other members of Congress explicitly urged Meta *not* to do so.[3]  But under Plaintiffs' theory, a private party would become a state actor so long as any one of the 535 members of Congress publicly urges it to take a particular action, even if the rest of Congress disagrees with the member's statement and even if some members urge the private party to take the opposite action.[4]

*Second*, Plaintiffs also fail to plausibly allege that "the state is responsible for the *specific conduct* of which the plaintiff complains," *Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (emphasis added)—here, Meta's suspension of their *specific* accounts and removal of their *specific* posts.  *See e.g.*, *Heineke*, 965 F.3d at 1014 (no state action where plaintiff "does not allege that the state government commanded a particular result in, or otherwise participated in, his specific case");

---

[3] *See, e.g.*, Press Release, Buck Comments on Facebook's Attack On First Amendment (May 5, 2021), *available at* https://tinyurl.com/2tb3y93s; Press Release, Congressman Mo Brooks: Facebook Ban of President Trump Is A Direct Attack on First Amendment Freedom Of Speech Rights (May 5, 2021), *available at* https://tinyurl.com/yvd223cy.  The Court may take judicial notice of such press releases. *See, e.g.*, *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 n.5 (9th Cir. 2018).

[4] Plaintiffs also cannot rely on statements by then-candidate Joe Biden in November 2019 and January 2020 and former First Lady Michelle Obama in January 2021, *see* Am. Compl. ¶ 71, because "allegations involving non-federal actors … are irrelevant" to the state action inquiry.  *CHD*, 2021 WL 2662064, at \*10; *see also Buentello*, 2021 WL 2588856, at \*3 (actions by then-candidate Lauren Boebart did not amount to state action because she was not a governmental actor at the time).

1   *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 843 (9th Cir. 1999) (no state action where

2   plaintiff failed to allege that "the government directed a specific entity to take a specific (allegedly

3   unconstitutional) action against a specific person").   Plaintiffs point to a hodgepodge of statements

4   that call for reforms to Section 230 or call on social media companies to do a better job of exercising

5   their editorial judgment generally.  *See* Am. Compl. ¶ 71.  But mere "regulatory interest in a problem"

6   is not enough to "transform[] any subsequent private efforts to address the problem … into state

7   action." *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996).  And other than Mr. Trump,

8   none of the plaintiffs point to any statements that direct Meta to take action against their specific posts

9   or their specific accounts.  *See CHD*, 2021 WL 2662064, at *15 ("CHD does not allege that Schiff (or

10  anyone else from the government) directed Facebook or Zuckerberg to take any specific action with

11  regard to CHD or its Facebook page."); *Doe*, 2021 WL 4864418, at *3 (similar); *Daniels*, 2021 WL

12  1222166, at *6 (similar).

13          As to Mr. Trump, the Amended Complaint points to (at most) two statements that arguably

14  call on Meta to remove his content or suspend his account, one from Senator Ed Markey and one from

15  Congressman Adam Schiff.[5]  But those statements fall well short of the "coerci[on]" or "significant

16  encouragement" necessary to attribute a private decision to the government.  *Sullivan*, 526 U.S. at 52.

17  On the rare occasion where courts have found state action based on pressure from government

18  officials, the state official with legal control over the private party's actions threatened to impose legal

19  sanctions (such as criminal prosecution) if the private party did not comply with the official's demands.

20  *See Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987).

21  There is nothing of that sort here.  Nothing in Senator Markey's statement or Congressman Schiff's

22  tweet (which was posted months after Meta's initial decision to suspend Mr. Trump) threatens to

23  impose sanctions on Meta for failing to suspend Mr. Trump's account or remove his posts.  Courts

24

25  ───────────────
    [5] Senator Markey on October 23, 2020: Mr. Zuckerberg, can you commit that, "[i]f the President goes
26  on Facebook and encourages violence [after election results are announced], that you will make sure
    your company's algorithms don't spread that content and you will immediately remove those
27  messages?"  Am. Compl. ¶ 71.  Representative Schiff on May 5, 2021: "There's no Constitutional
    protection for using social media to incite an insurrection.  Trump is willing to do anything for himself
    no matter the danger to our country.  His big lies have cost America dearly.  And until he stops,
28  Facebook must ban him.  Which is to say, forever." *Id.*

have made clear that mere "call[s] for" private parties to take a certain action are not enough.  *Zhou v. OutFront Media*, 2020 WL 9037147, at *1 (N.D. Cal. May 26, 2020), *aff'd*, No. 21-15554 (9th Cir. Jan. 14, 2022).

Even if the statements at issue could somehow be interpreted as "threatening new regulations, antitrust breakup, and removal of Section 230 immunity" for failing to suspend the Mr. Trump's account or removing his content, Am. Compl. ¶ 71, courts in this district have squarely rejected the notion that such threats are enough to turn a private service's editorial judgments into state action. *Doe* is squarely on point.  There, the plaintiffs alleged that YouTube's removal of their videos and suspension of their accounts amounted to state action because certain Democratic legislators threatened "the repeal of CDA Section 230 protections, 'show trials' in front of the U.S. Senate, and a DOJ antitrust suit."  *Doe*, 2021 WL 4864418, at *3.  The court rejected that argument, explaining that "Plaintiffs fail to point to any penalties that necessarily or even likely would have followed if Defendants did not suspend their accounts."  *Id.*  Such "speculative" assertions were not enough to turn private conduct into state action.  *Id.* at *3-4.  The same conclusion applies here.

**B.      Section 230 Does Not Transform Private Conduct Into State Action.**

Plaintiffs also argue that Meta's editorial judgments amount to state action because Congress purportedly encouraged those judgments by passing Section 230 in 1996, years before Facebook launched.  Am. Compl. ¶¶ 81-91.  This Court should reject that argument, in accord with every other court to have considered it.  *See, e.g.*, *Atkinson*, 2021 WL 5447022, at *2; *Newman*, 2021 WL 2633423, at *9-10; *CHD*, 2021 WL 2662064, at *13-15; *Divino*, 2021 WL 51715, at *6-7.  Section 230 did not "coerce" Meta to suspend plaintiffs or to remove their posts for the simple reason that Section 230 "does not require private entities to do anything."  *CHD*, 2021 WL 2662064, at *6.  Rather, Section 230's protections apply *regardless* of whether Meta leaves content up or takes it down.  *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266-68 (9th Cir. 2016) (applying Section 230 to bar suit against Yelp for *publishing* third-party content); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (explaining that Section 230 bars suits "seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content").  The statute leaves it to the providers to decide what to leave up and what to take

down according to their own standards; it does not tip the scales either way.  Because the government has not "put its own weight on the side of the proposed practice," *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357 (1974), Meta's editorial decisions cannot be attributed to the government.  *See Rendell-Baker v. Kohn*, 457 U.S. 830, 841-42 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 1008-09 (1982).

Indeed, Section 230 "can just as easily be seen as state inaction" or "a legislative decision not to intervene" in a provider's editorial judgments about what content to leave up and what to take down. *Sullivan*, 526 U.S. at 53.  In enacting Section 230, Congress declared it "the policy of the United States" that the internet be "unfettered by Federal or State regulation."  47 U.S.C. § 230(b).  Instead of tasking government regulators with the responsibility of policing content on the internet, Congress chose to allow internet services to "self-police" the dissemination of offensive material.  *Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003); *see also Zeran*, 129 F.3d at 331.  "Such permission of a private choice cannot support a finding of state action."  *Sullivan*, 526 U.S. at 54; *see also Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 845 (9th Cir. 2017).

In fact, courts have squarely held that the government's decision to provide private parties with protection from certain suits does not turn those parties into governmental actors.  *See, e.g.*, *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) (explaining that "the act of extending governmental tort liability and immunity rules to foster parents does not transform the [foster parents] into State actors").  For good reason.  Countless rules provide private parties with protection from suits, such as statutes of limitations or federal preemption provisions.  Perhaps some protections "can in some sense be seen as encouraging" private parties to take certain action.  *Sullivan*, 526 U.S. at 53; *see also Roberts*, 877 F.3d at 845.  But if such "subtle encouragement" were enough to turn private parties into state actors, *Sullivan*, 526 U.S. at 53, then "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  That result "would be contrary to the 'essential dichotomy' between public and private acts" that the Constitution demands.  *Sullivan*, 526 U.S. at 53 (citation omitted); *see also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 165-66 (1978) (explaining that a state's decision not to provide a remedy for private conduct does not turn that conduct into state action).

1    **C.      Plaintiffs' Joint Action Theory Fails As A Matter Of Law.**

2    Plaintiffs' attempts to establish state action find no more success when they claim that Meta

3    acted jointly with the Centers of Disease Control and Prevention ("CDC") to suspend their accounts

4    and remove certain content related to COVID-19.  *See* Am. Compl. ¶¶ 92-131.  Courts in this District

5    have rejected nearly identical claims—including claims against Meta specifically.  *See CHD*, 2021

6    WL 2662064, at *12 (rejecting claim that Meta and its CEO acted jointly with the CDC to suppress

7    vaccine-related misinformation); *see also Doe*, 2021 WL 4864418, at *4-5 (rejecting similar claim

8    against Google).  The "relevant inquiry" for assessing joint action is whether "the State has so far

9    insinuated itself into a position of interdependence with the private parties that it was a joint participant

10   in the enterprise."  *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021).

11   To charge a private party with state action under that standard, the private party's actions must be

12   "inextricably intertwined with those of the government."  *Id*.   "Joint action therefore requires a

13   substantial degree of cooperative action."  *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989).

14   Moreover, the joint action must involve "the specific conduct of which the plaintiff complains."  *Ohno*,

15   723 F.3d at 994.  Plaintiffs do not meet that standard here.

16   Plaintiffs do not allege that the government and Meta were "inextricably intertwined" in

17   deciding to suspend their *specific* accounts or to remove their *specific* posts.  Plaintiffs allege that Mr.

18   Zuckerberg asked Dr. Fauci to record a video for Facebook's Coronavirus Information Hub, and that

19   Meta has a policy of removing claims "which public health experts have advised us could lead to

20   COVID-19 vaccine rejection."  Am. Compl. ¶¶ 94-98, 101.  But that suggests, at most, that Meta and

21   the CDC shared a common goal to promote accurate COVID-19 information and to encourage

22   vaccination, which falls well short of the standard for finding joint action.  *See, e.g.*, *Kirtley v. Rainey*,

23   326 F.3d 1088, 1093 (9th Cir. 2003) (explaining that no state action exists where private party acts

24   independently, even if the government and the private party share a common interest); *Gallagher v.*

25   *Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995) (holding that the fact that the

26   government and private entity shared a "common goal" is not enough to establish joint action).  It does

27   not suggest any agreement or coordination between Meta and the CDC to remove Plaintiffs' *specific*

28   posts or suspend their *specific* accounts—let alone that Meta and the government were "inextricably

intertwined" or "interdependent" in doing so.  *See O'Handley*, 2022 WL 93625, at *9-10 (allegation that government official flagged specific post for Twitter to remove was not enough to establish joint action, as "[o]ne party supplying information to another party does not amount to joint action").  In fact, the majority of the challenged editorial decisions, including Mr. Trump's posts about the January 6 protests, have nothing to do with COVID-19 or vaccines.  *See* Am. Compl. ¶¶ 138-41 (Mr. Trump's posts about the January 6 protests); *id.* ¶¶ 144-45 (Ms. Albert's posts about leaving the Democratic Party); *id.* ¶ 150 (Mr. Michael's posts supporting President Trump and his policies); *id.* ¶ 170 (Ms. Rios's post about a Proud Boys rally); *id.* ¶ 179 (Mr. Cabo's pro-President Trump content); *id.* ¶ 185 (Ms. Rodriguez-Fresneda's post about Hunter Biden's laptop).  There is no plausible reason for attributing those decisions to the CDC.

*CHD* illustrates the point.  In that case, the plaintiffs alleged that Facebook and its CEO "work[ed] together" with the CDC "to reduce the spread of health or vaccine misinformation" and to "promote universal vaccination."  2021 WL 2662064, at *11.  The court held that those allegations were inadequate, as "simply alleging that Facebook and the CDC are 'working together' or 'partnering' to curb the spread of 'vaccine misinformation' does not allege that the *specific acts* challenged in this lawsuit were made pursuant to a CDC policy"—"the decisions to label CHD's posts as 'false' or 'misleading,' the decision to put the warning label on CHD's Facebook page, or the decisions to 'demonetize' or shadow-ban.'"  *Id.* at *12-13 (emphasis added); *see also Doe*, 2021 WL 4864418, at *5 (finding no joint action against YouTube where "there is no allegation that government officials were in the room or somehow directly involved in the decision to suspend Plaintiffs"); *O'Handley*, 2022 WL 93625, at *10 ("Generalized statements about working together do not demonstrate joint action.").  Just so here.  Plaintiffs have not alleged that Meta removed their specific content or suspended their specific accounts pursuant to any coordination with the CDC.  Rather, they acknowledge that Meta removed their posts and suspended their accounts based on Meta's own application of its own standards.  *See* Am. Compl. ¶ 9; *Collins*, 878 F.2d at 1151.[6]

---

[6] At a minimum, the Court should dismiss Plaintiffs' claim for damages because Congress has not authorized suits for damages for their First Amendment claim.  *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001).

1   **II.    PLAINTIFFS' DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED.**

2          The Court should dismiss Count 2 because Plaintiffs lack Article III standing to challenge the

3   constitutionality of Section 230 of the Communications Decency Act.  To establish standing, Plaintiffs

4   must demonstrate (among other things) that their injury is "fairly traceable to the challenged actions"

5   and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable

6   decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks omitted).  Here,

7   "[n]one of the alleged injuries in [Plaintiffs'] challenge to the CDA's constitutionality are fairly

8   traceable to the application of § 230 of the CDA." *Lewis v. Google LLC*, 851 F. App'x 723, 723 (9th

9   Cir. 2021).   Plaintiffs' alleged injuries—the removal of their content and suspension of their

10  accounts—"all arose from the actions of [Meta], a private entity, as it enforced its own standards," not

11  from any application of Section 230.  *Id.* at 723-24.  And here, it is "entirely speculative" that

12  "Facebook … would voluntarily change course and permit Plaintiffs' censored content to stand were

13  the [court] to declare § 230 unconstitutional."  *Am. Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d

14  100, 106 (D.D.C. 2016), *aff'd* 697 F. App'x 7 (D.C. Cir. 2017).  After all, "even absent the affirmative

15  defense supplied by § 230, Facebook could argue that they cannot be compelled to publish a particular

16  message" under the First Amendment.  *Id.*  Indeed, a court in this District dismissed an identical claim

17  on Article III standing grounds, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 952 (N.D. Cal. 2020), and

18  the Ninth Circuit affirmed, 851 F. App'x 723, 723-25.  This Court should follow course.

19         Alternatively, the Court could dismiss the claim on discretionary grounds under the

20  Declaratory Judgment Act.  The Act provides that a court "*may* declare the rights and other legal

21  relations of any interested party," 28 U.S.C. § 2201(a) (emphasis added), not that it *must* do so.  That

22  language "has long been understood to confer on federal courts unique and substantial discretion in

23  deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.

24  118, 136 (2007).  Courts in this District have repeatedly declined to exercise that discretion where (as

25  here) plaintiffs seek to use "the Declaratory Judgment Act to anticipate an affirmative defense" like

26  § 230.  *See, e.g.*, *Newman*, 2021 WL 2633423, at *13-14; *Divino*, 2021 WL 51715, at *11.  As one

27  court put it: "Dismissal of a declaratory relief claim intended to anticipate an affirmative defense is

28  appropriate, particularly where, as here, the Court need not consider the affirmative defense in order

to resolve defendants' motion to dismiss plaintiffs' other claims."  *Divino*, 2021 WL 51715, at *11.

There is no reason for a different approach here.

In all events, Section 230 is plainly constitutional, as the Ninth Circuit—and every court to have considered the issue—has held.  *See Lewis*, 851 F. App'x at 724 n.2; *Green v. America Online, Inc.*, 318 F.3d 465, 472 (3d Cir. 2003); *Winter v. Facebook, Inc.*, 2021 WL 5446733, at *5 (E.D. Mo. Nov. 22, 2021).  "Section 230 does not prohibit any speech."  *Lewis*, 851 F. App'x at 724 n.2.  That is the beginning and end of the dispute.  *Id.*  Plaintiffs nevertheless argue that Section 230 violates the First Amendment on its face and as-applied in this case because it supposedly provides incentives for private parties to restrict speech on their privately-owned services.  *See* Am. Compl. ¶¶ 212-13.  But courts have consistently recognized that Section 230 *promotes* speech by encouraging providers to *disseminate* speech that they would otherwise not.  *See, e.g.*, *Batzel*, 333 F.3d at 1027-28.  Applying Section 230 to protect a service's editorial decisions therefore encourages more speech in the vast majority of cases.  There is thus no plausible argument that Section 230 violates the First Amendment on its face.  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (explaining that a court will typically deem a statute unconstitutional on its face only if "the law is unconstitutional in all of its applications").

Plaintiffs' as-applied challenge fares no better.  Even assuming that incentivizing private parties to restrict speech raises First Amendment concerns, Section 230 did not incentivize Meta to restrict Plaintiffs' speech, as Section 230's protections apply regardless whether Meta publishes content or removes it.  And in all events, Meta's editorial judgments are squarely protected by the First Amendment.  *See supra* at 4.  To the extent that Section 230 incentivized Meta to restrict Plaintiffs' speech at all, it did so only to the same extent that the First Amendment did.  At the very least, therefore, Section 230 is constitutional as applied here, where it protects social media services from liability for editorial judgments that the First Amendment itself already protects.

## III.   PLAINTIFFS' CLAIM UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT SHOULD BE DISMISSED.

Count 3 alleges that Meta violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  That claim fails for three reasons.  *First*, Meta's Terms of Service provides that "the

laws of the State of California … govern" their claims.  Order, ECF No. 108 at 2.  As the Southern District of Florida concluded earlier in this case, Plaintiffs agreed to those Terms, *id.* at 9, and Plaintiffs have no basis for evading them.  Because both Meta and Mr. Zuckerberg are based in California, "California has an obvious substantial relationship to the parties and a reasonable basis to enforce its choice of law."  *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018).  And applying California law in this context is not "contrary to a fundamental policy" of Florida.  *Id.*  California "has its own robust body of consumer protection law that strives to prevent consumer deception by prohibiting unlawful business practices and unconscionable contract provisions."  *Palomino v. Facebook Inc.*, 2017 WL 76901, at *3-4 (N.D. Cal. Jan. 9, 2017).  Courts in this district regularly apply Meta's choice-of-law clause to dismiss claims brought under a different state's consumer protection laws.  *See, e.g.*, *id.* at *3-4; *Williams*, 384 F. Supp. 3d at 1057.  This Court should do the same.

Second, the First Amendment forecloses Plaintiffs' requested relief under the FDUTPA.  Plaintiffs do not appear to seek damages under the FDUTPA.  *See* Am. Compl. ¶ 232.  Instead, they seek injunctive relief "restoring the Plaintiff and the Putative Class Members access to their platform," compelling Meta to "honor" its own policies, and "imposing a monitor to ensure Defendants' compliance with this Court's order."  *Id.*  But, like a newspaper's decision about what columns to carry or a bookstore's choice of which books to sell, the First Amendment protects Meta's editorial judgment about what content to allow and how and where to display that content.  *See supra* at 4; *see also O'Handley*, 2022 WL 93625, at *13-15; *Moody*, 2021 WL 2690876, at *9; *Paxton*, 2021 WL 5755120, at *9-10.  As a court in this District has explained, such decisions "are expressive," as "a platform's decision to publish or not publish particular [content] says something about what the platform represents."  *O'Handley*, 2022 WL 93625, at *14-15; *see also Moody*, 2021 WL 2690876, at *9; *Paxton*, 2021 WL 5755120, at *9-10.  By requiring Meta to disseminate speech that it would not otherwise disseminate, Plaintiffs' requested relief would require Meta to "alter the expressive content of their" message.  *Hurley*, 515 U.S. at 572-73; *see also NIFLA v. Becerra*, 138 S.Ct 2361, 2371 (2018).  That runs afoul of the "fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message."  *Hurley*, 515 U.S. at 573; *see*

*also O'Handley*, 2022 WL 93625, at *15 ("Twitter has important First Amendment rights that would be jeopardized by a Court order telling Twitter what content-moderation policies to adopt and how to enforce those policies.").

*Third*, Plaintiffs fail to plausibly allege a violation of the FDUTPA. The Act prohibits "deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). An act or practice is "deceptive" if there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). Plaintiffs must allege "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer." *Id.* (quotations omitted). Where (as here) the Plaintiffs' claim sounds in fraud, it must satisfy Rule 9(b)'s heightened pleading bar by setting forth with particularity the circumstances of the deception. *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1381 (S.D. Fla. 2015). Plaintiffs come nowhere close to meeting that standard.

The Amended Complaint includes a conclusory allegation that Meta deceptively "proclaim[s] objective, uniform standards," Am. Compl. ¶ 221, but it does not identify any statement by Meta that is likely to mislead a reasonable consumer. Plaintiffs refer to Meta's Community Standards, but the portions that they reference merely provide details about what content Meta prohibits and why it prohibits it. *See id.* ¶¶ 41-45. Plaintiffs also refer to statements about Meta's Oversight Board, but they do not identify anything in those statements that is likely to mislead anyone. *See id.* ¶ 47.

Indeed, the Community Standards make clear that Meta retains broad discretion to make judgment calls about what content to take down and when to suspend accounts. Meta's policy on Violence and Incitement, for example, provides that Meta may remove content or disable accounts "when we *believe* there is a genuine risk of physical harm or direct threats to public safety." Duffey Decl., Exs. B, C (emphasis added). And its Terms of Service provides that "we *may* suspend or permanently disable access to your account" if "*we determine* that you have clearly, seriously or repeatedly breached our Terms or Policies." Duffey Decl., Exs. G (emphasis added). Meta makes clear to users that it often makes difficult judgment calls about whether content violates its standards.

1    Some may disagree with Meta's decisions or find them inconsistent, but that does not mean Meta's

2    policies are deceptive.

3    **IV.   PLAINTIFFS' CLAIM UNDER FLORIDA'S NEW SOCIAL-MEDIA LAW SHOULD**

4    **BE DISMISSED.**

5          Finally, Plaintiffs claim that Meta violated the recently enacted Senate Bill 7072, which

6    requires social media platforms to "apply censorship, deplatforming, and shadow banning standards

7    in a consistent manner among its users on the platform." Fla. Stat. § 501.2041(2)(b).  That claim fails

8    at the outset because Senate Bill 7072 took effect on July 1, 2021, and the Amended Complaint does

9    not identify any challenged editorial decision that took place after that date.  *See* Am. Compl. ¶ 139

10   (Mr. Trump in January 2021); *id*. ¶ 145 (Ms. Albert in January 2021); *id*. ¶ 151 (the Michaels in 2020);

11   *id*. ¶ 156 (Ms. Horton in April 2021); *id*. ¶¶ 168-70 (Ms. Rios in 2020); *id*. ¶¶ 177-78 (Mr. Cabo in

12   2020 and January 2021); *id*. ¶ 184 (Ms. Rodriguez-Fresneda in 2020).  A law that "creates new

13   obligations or liabilities is presumed to apply prospectively." *Hassen v. State Farm Mut. Auto. Ins.*

14   *Co.*, 674 So. 2d 106, 108 (Fla. 1996); *see also TwoRivers v. Lewis*, 174 F.3d 987, 993 (9th Cir. 1999)

15   ("Absent clear legislative intent to the contrary, a presumption exists against retroactive application of

16   new statutes.").  Nothing in Senate Bill 7072 evinces an intent to depart from that presumption.

17        In all events, Senate Bill 7072's consistency requirement is plainly unconstitutional, as the

18   Northern District of Florida has already recognized in enjoining state officials from enforcing it.  *See*

19   *Moody*, 2021 WL 2690876, at *12; *see also Paxton*, 2021 WL 5755120, at *15 (enjoining a similar

20   Texas law).  Senate Bill 7072 impermissibly interferes with Meta's First Amendment right to exercise

21   editorial judgment over speech and speakers on its privately-owned services.  *See supra* at 4.  By

22   requiring Meta to display speech that it would not otherwise display and to apply its editorial standards

23   in ways it would not otherwise apply them, Senate Bill 7072's consistency provision requires Meta to

24   "alter the expressive content" of its message.  *Hurley*, 515 U.S. at 572-73.  Senate Bill 7072 therefore

25   violates the First Amendment and cannot be enforced, either by the State or through private litigation.

26        Senate Bill 7072 also violates the First Amendment for the independent reason that it singles

27   out a subset of services for disfavored treatment.  Laws that single out one category of speaker demand

28   strict scrutiny.  *See Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 228 (1987); *Minneapolis Star*

& *Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 583 (1983).  Senate Bill 7072 singles out certain social media services and saddles them (and only them) with a slew of onerous burdens.  The law sweeps in disfavored businesses (so-called "big-tech") and exempts favored businesses, such as smaller services and any entity that owns and operates a theme park.  *Moody*¸ 2021 WL 2690876, at *10.  That "differential treatment" "suggests that the goal of the [law] is not unrelated to suppression of expression."  *Minneapolis Star*, 460 U.S. at 585; *Moody*, 2021 WL 2690876, at *10; *Paxton*, 2021 WL 5755120, at *11.  As the district court in *Moody* explained, the Governor's signing statement and numerous remarks of legislators "show rather clearly" that the law targets specific platforms because of their "perceived liberal viewpoint."  *Moody*¸ 2021 WL 2690876, at *1, *10; *see also Paxton*, 2021 WL 575512, at *10.  The First Amendment does not countenance such "suppression" and manipulation of viewpoints unless the law satisfies strict scrutiny.  *Minneapolis Star*, 460 U.S. at 585.

Senate Bill 7072's consistency provision cannot survive any level of heightened scrutiny, let alone strict scrutiny.  *Moody*, 2021 WL 2690876 at *9-11.  The provision cannot be justified on the theory that the state has an interest in ensuring that the public has access to Plaintiffs' viewpoints.  Whatever interest the state may have in "ensur[ing] that a wide variety of views reach the public," that interest is not sufficient to justify compelling private parties to host speech that they do not want to host.  *Tornillo*, 418 U.S. at 247-48.  After all, the "concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment."  *Buckley v. Valeo*, 424 U.S. 1, 48-49 (1976).

## V.      SECTION 230 ALTERNATIVELY BARS PLAINTIFFS' STATE LAW CLAIMS.

Although the Court does not need to reach the issue, Plaintiffs' state law claims fail for the independent reason that they are barred by Section 230.  Section 230 provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker or any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  As this Court has explained, that means that plaintiffs may not impose liability on internet platforms for exercising "a publisher's traditional editorial functions," such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."  *Fyk v. Facebook, Inc.*, 2019 WL 11288576, at *1-2 (N.D. Cal. June 18, 2019) (White, J.) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d

1096, 1102 (9th Cir. 2009)).  Yet that is exactly what Plaintiffs' suit seeks to do: impose liability on Meta under the FDUTPA and Senate Bill 7072 for its decision about whether or not to permit their content and accounts.  As courts have recognized repeatedly, such decisions are at the heartland of what Section 230 protects.  *See Fyk*, 2019 WL 11288576, at *3 (holding that Section 230 protection applies where "Plaintiff's claims arise from the allegations that Facebook removed or moderated his pages"); *Daniels*, 2021 WL 1222166, at *12 ("Section 230(c)(1) immunity bars all of [the plaintiffs'] claims that are premised on YouTube's removal of or restriction of access to Mr. Daniels's videos from its platform."); *King v. Facebook, Inc.*, 2019 WL 4221768, at *3 (N.D. Cal. Sept. 5, 2019) (holding that Section 230(c)(1) bars "claims against Facebook" that "seek[] to hold it liable as a publisher for either removing [plaintiff's] posts, blocking his content, or suspending his accounts"), *aff'd*, 845 F. App'x 691 (9th Cir. 2021); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (holding that Section 230(c)(1) bars claims that arose from Twitter's suspension of plaintiff's account); *Sikhs for Justice "SFJ", Inc. v Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (holding that Section 230 protection applies where claim sought to hold Facebook liable for "the removal of the SFJ Page in India"), *aff'd*, 697 F. App'x 526 (9th Cir. 2017); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1065-66 (N.D. Cal. 2016) (holding that Section 230 preempts claim under California's Unfair Competition Law), *aff'd*, 700 F. App'x 588 (9th Cir. 2017); *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1324 (M.D. Fla. 2015) (holding that Section 230 preempts claim FDUPTA claim).

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

| | |
|---|---|
| Dated: January 14, 2022 | */s/ Ashley E. Littlefield* |
| | Ashley E. Littlefield (SBN 281027) |
| | KIRKLAND & ELLIS LLP |
| | 555 California Street |
| | San Francisco, CA 94104 |
| | Tel: (415) 439-1483 / Fax: (415) 439-1400 |
| | ashley.littlefield@kirkland.com |
| | |
| | Craig S. Primis, P.C. (admitted *pro hac vice*) |
| | K. Winn Allen, P.C. (admitted *pro hac vice*) |
| | Ronald K. Anguas (admitted *pro hac vice*) |
| | Kate H. Epstein (admitted *pro hac vice*) |
| | James Y. Xi (admitted *pro hac vice*) |
| | KIRKLAND & ELLIS, LLP |
| | 1301 Pennsylvania Avenue, N.W. |
| | Washington, D.C. 20004 |
| | Tel: (202) 389-5000 / Fax: (202) 389-5200 |
| | craig.primis@kirkland.com |
| | winn.allen@kirkland.com |
| | ronald.anguas@kirkland.com |
| | kate.epstein@kirkland.com |
| | james.xi@kirkland.com |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 14th day of January 2022, the foregoing was electronically transmitted to the Clerk of Court using the CM/ECF system, which will transmit notification of such filing to all registered participants.

*/s/ Ashley E. Littlefield*

Ashley E. Littlefield