Ashley E. Littlefield (SBN 281027)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel: (415) 439-1400 / Fax: (415) 439-1500
ashley.littlefield@kirkland.com

Craig S. Primis, P.C. (admitted *pro hac vice*)
K. Winn Allen, P.C. (admitted *pro hac vice*)
Ronald K. Anguas, Jr. (admitted *pro hac vice*)
Katherine H. Epstein (admitted *pro hac vice*)
James Y. Xi  (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:  (202) 389-5000 / Fax: (202) 389-5200
craig.primis@kirkland.com
winn.allen@kirkland.com
ronald.anguas@kirkland.com
kate.epstein@kirkland.com
james.xi@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc.
and Mark Zuckerberg*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

|  |  |
|---|---|
| DONALD J. TRUMP, et al., | Case No. 4:21-cv-09044-JSW |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| META PLATFORMS, INC., et al., | Hon. Jeffrey S. White |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.     Plaintiffs' First Amendment Claim Should Be Dismissed. .................................... 2

    A.     Plaintiffs' Compulsion Theory Fails As A Matter of Law. ........................... 2

    B.     Section 230 Does Not Transform Private Conduct Into State Action. ........... 6

    C.     Plaintiffs' Joint Action Theory Fails As A Matter Of Law. ......................... 7

II.    Plaintiffs' Declaratory Judgment Claim Should Be Dismissed. ............................ 8

III.   Plaintiffs' FDUPTA Claim Should Be Dismissed. .............................................. 10

IV.    Plaintiffs' Claim Under Senate Bill 7072 Should Be Dismissed. ......................... 12

V.     Section 230 Alternatively Bars Plaintiffs' State Law Claims. .............................. 15

CONCLUSION .................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abu-Jamal v. National Public Radio*
    1997 WL 527349 (D.D.C. Aug. 21, 1997) ........................................................................2

*Am. Freedom Def. Initiative v. Lynch*,
    217 F. Supp. 3d 100 (D.D.C. 2016) ................................................................................8

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ....................................................................................................4, 6

*Am. Orient Express Ry. Co., LLC v. STB*,
    484 F.3d 554 (D.C. Cir. 2007) ......................................................................................14

*American Family Association, Inc. v. City of San Francisco*,
    277 F.3d 1114 (9th Cir. 2002) .........................................................................................5

*Assoc. of Am. Physicians & Surgeons, Inc. v. Schiff*,
    23 F.4th 1028 (D.C. Cir. 2022) .......................................................................................4

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963) .........................................................................................................5

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
    727 F.3d 917 (9th Cir. 2013) .......................................................................................13

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ...................................................................................................3, 4

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*,
    827 F.2d 1291 (9th Cir. 1987) .........................................................................................5

*Children's Health Defense v. Facebook Inc.*,
    2021 WL 2662064 (N.D. Cal. June 29, 2021) .............................................................7, 8

*Conservation Force v. Salazar*,
    677 F. Supp. 2d 1203 (N.D. Cal. 2009) ..........................................................................7

*DaimlerChrysler Corp v. Cuno*,
    547 U.S. 332 (2006) .......................................................................................................9

*Daniels v. Alphabet, Inc.*
    2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) .............................................................2, 3

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
    518 U.S. 727 (1996) .....................................................................................................10

*Divino Grp. LLC v. Google LLC,*
    2021 WL 51715 (N.D. Cal. Jan. 6, 2021) ........................................................7, 9

*Doe v. Google LLC,*
    2021 WL 4864418 (N.D. Cal. Oct. 19, 2021) ...........................................................5

*Fed. Agency of News LLC v. Facebook, Inc.,*
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) .................................................................15

*Green v. Am. Online, Inc.,*
    318 F.3d 465 (3d Cir. 2003) .....................................................................................9

*Hammerhead Enterprises Inc. v. Brezenoff,*
    707 F.2d 33 (2d Cir. 1983) .......................................................................................5

*Heineke v. Santa Clara Univ.,*
    965 F.3d 1009 (9th Cir. 2020) ..................................................................................3

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
    515 U.S. 557 (1995) ................................................................................................13

*Informed Consent Action Network v. YouTube LLC,*
    2022 WL 278386 (N.D. Cal. Jan. 31, 2022) .....................................................2, 3, 8

*Iowa-Des Moines Nat'l Bank v. Bennett,*
    284 U.S. 239 (1931) ..................................................................................................3

*Lewis v. Casey,*
    518 U.S. 343 (1996) ................................................................................................12

*Lewis v. Google LLC,*
    461 F. Supp. 3d 938 (N.D. Cal. 2020) .....................................................................9

*Lewis v. Google LLC,*
    851 F. App'x 723 (9th Cir. 2021) ....................................................................1, 8, 9

*Librizzi v. Ocwen Loan Servicing, LLC,*
    120 F. Supp. 3d 1368 (S.D. Fla. 2015) ...................................................................12

*Lombard v. Louisiana,*
    373 U.S. 267 (1963) .............................................................................................3, 5

*Lugar v. Edmondson Oil Co., Inc.,*
    457 U.S. 922 (1982) ..................................................................................................6

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n,*
    138 S.Ct. 1719 (2018) ............................................................................................14

*Mathis v. Pac. Gas & Elec. Co.,*
    891 F.2d 1429 (9th Cir. 1989) ..................................................................................4

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007)................................................................................................9

*Miami Herald Publ'g Co. v. Tornillo*,
 418 U.S. 241 (1974)...............................................................................................14

*NetChoice, LLC v. Moody*,
 2021 WL 2690876 (N.D. Fla. June 30, 2021) ..................................................13, 15

*NetChoice, LLC v. Paxton*,
 2021 WL 5755120 (W.D. Tex. Dec. 1, 2021) ........................................10, 13, 14

*Newman v. Google LLC*,
 2021 WL 2633423 (N.D. Cal. June 25, 2021) .................................................7, 9

*O'Handley v. Padilla*,
 2022 WL 93625 (N.D. Cal. Jan. 10, 2022)........................................................8, 13

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*,
 475 U.S. 1 (1986)...................................................................................................14

*Palomino v. Facebook, Inc.*,
 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ...............................................................11

*Peterson v. City of Greenville*,
 373 U.S. 244 (1963) ..................................................................................................5

*Prager Univ. v. Google LLC*,
 951 F.3d 991 (9th Cir. 2020) ...........................................................................1, 10

*Preminger v. Peake*,
 552 F.3d 757 (9th Cir. 2008) .................................................................................10

*Railway Employees' Department v. Hanson*
 351 U.S. 225, 238 (1956) ...........................................................................................7

*Rayburn ex rel. Rayburn v. Hogue*,
 241 F.3d 1341 (11th Cir. 2001) .................................................................................6

*Reitman v. Mulkey*
 387 U.S. 369 (1967) ..................................................................................................7

*Roberts v. AT&T Mobility LLC*,
 877 F.3d 833 (9th Cir. 2017) .....................................................................................6

*Robinson v. Florida*,
 378 U.S. 153 (1964).....................................................................................................5

*Skinner v. Railway Labor Executives' Ass'n*,
 489 U.S. 602 (1989)...................................................................................................7

*Sutton v. Providence St. Joseph Med. Ctr.*,
   192 F.3d 826 (9th Cir. 1999) ................................................................3, 6

*Terry v. Adams*,
   345 U.S. 461 (1953).....................................................................................3

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)...............................................................................12

*U.S. Telecom Ass'n v. FCC*,
   855 F.3d 381 (D.C. Cir. 2017) ..................................................................15

*United States v. Classic*,
   313 U.S. 299 (1941)......................................................................................3

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ...................................................10

*Winter v. Facebook, Inc.*,
   2021 WL 5446733 (E.D. Mo. Nov. 22, 2021) ...........................................9

*Wooley v. Maynard*,
   430 U.S. 705 (1977)....................................................................................14

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ......................................................................9

*Zhou v. Breed*,
   2022 WL 135815 (9th Cir. Jan. 14, 2022) ................................................5

*Zieper v. Metzinger*,
   474 F.3d 60 (2d Cir. 2007)..........................................................................5

**Statutes**

47 U.S.C. § 230 ................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................12

**INTRODUCTION**

Plaintiffs' opposition fails to overcome the fundamental flaw in their complaint: Meta is a private party, and "the First Amendment prohibits the government—not a private party—from abridging speech." *Prager Univ. v. Google LLC*, 951 F.3d 991, 996 (9th Cir. 2020). Plaintiffs contend that Meta should nevertheless be treated as a state actor because some members of Congress purportedly pressured Meta into suspending Plaintiffs' accounts and removing their posts by threatening to amend or repeal Section 230 of the Communications Decency Act. Numerous courts (including many in this District) have rejected that argument, and there is no reason for a different outcome here. Statements by individual members of Congress cannot turn Meta's private decisions into state action, as no member of Congress has the authority to single-handedly amend or repeal Section 230. And in any event, the statements by members of Congress at issue here did not make any particular threats against Meta specifically for failing to suspend Plaintiffs' accounts or remove their posts.

Plaintiffs offer little defense of their other theories for why Meta's editorial decisions should be treated as state action. They claim that Congress "encouraged" Meta to remove their posts by enacting Section 230, but Section 230 protects Meta's decisions to leave content up just as much as it protects its decisions to take content down. Plaintiffs also claim that Meta acted jointly with the government to suspend their accounts and remove their posts, but those allegations fall far short of the standard for government coordination necessary to allege joint action. Nor do Plaintiffs meaningfully defend their other claims. As the Ninth Circuit has squarely held in a similar case, Plaintiffs lack standing to seek a declaration that Section 230 is unconstitutional. *See Lewis v. Google LLC*, 851 F. App'x 723, 723 (9th Cir. 2021). Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is barred by the choice of law provision that they agreed to as well as by the First Amendment, and they fail to state a claim under FDUTPA in any event. Likewise, Plaintiffs' claim under Florida's new social media law fails because the law is not retroactive and violates the First Amendment. For these reasons and those that follow, as well those set forth in Meta's opening memorandum, the Court should dismiss this case with prejudice.

**ARGUMENT**

**I.   PLAINTIFFS' FIRST AMENDMENT CLAIM SHOULD BE DISMISSED.**

      **A.   Plaintiffs' Compulsion Theory Fails As A Matter of Law.**

      Plaintiffs argue that Meta's decision to suspend their accounts and remove their posts is state action because certain members of Congress pressured it into doing so.  Opp. 5-15 (Dkt. 159).  That argument fails for two reasons.  *First*, statements by individual members of Congress cannot turn private decisions into state action.  And *second*, even if they could, Plaintiffs fail to allege that the government is responsible for Meta's suspension of their specific accounts and removal of their specific posts, as they do not point to any statement that ties a realistic adverse consequence to the editorial decisions that they challenge.  Plaintiffs cannot overcome those fundamental problems.

      To begin, statements by individual members of Congress cannot turn private decisions into state action, as multiple courts in this District and others have held.  Plaintiffs claim those cases "do not stand for a general proposition that statements from individual members of Congress cannot turn private decisions into state action."  Opp. 14-15.  But that is precisely what they say.  In *Daniels v. Alphabet, Inc.*, a court in this District squarely held that the "publicly expressed views of individual members of Congress—regardless of how influential—do not constitute 'action' on the part of the federal government."  2021 WL 1222166, at *6 (N.D. Cal. Mar. 31, 2021).  In *Abu-Jamal v. National Public Radio*, the court found no state action based on threats from members of Congress because "individual members of Congress" lack "legal control over [the private party's] actions."  1997 WL 527349, at *6 (D.D.C. Aug. 21, 1997), *aff'd*, 159 F.3d 635 (D.C. Cir. 1998).  And just a few weeks ago, another court in this District held that a plaintiff's coercion theory was "doom[ed]" because statements by individual members of Congress are not coercive.  *See Informed Consent Action Network v. YouTube LLC* ("*ICAN*"), 2022 WL 278386, at *7 (N.D. Cal. Jan. 31, 2022) ("Simply put, '[t]he publicly expressed views of individual members of Congress—regardless of how influential— do not constitute "action" on the part of the federal government.'" (quoting *Daniels*, 2021 WL 1222166, at *6)).  The same conclusion applies here.

      Plaintiffs pivot and contend that those cases are somehow in "direct conflict with binding Supreme Court precedent."  Opp. 14-15.  But none of the Supreme Court cases they cite involved

statements by individual members of Congress.  For example, *Lombard* involved statements made by a mayor and superintendent of the police—not a member of Congress—and in all events, the defendant in that case was *the State of Louisiana*, not a private party.  *See Lombard v. Louisiana*, 373 U.S. 267, 270-71 & n.2 (1963).  The rest of Plaintiffs' cases are even less relevant.  *See Terry v. Adams*, 345 U.S. 461, 470 (1953) (addressing whether whites-only primary election violates the Fifteenth Amendment); *United States v. Classic*, 313 U.S. 299, 307 (1941) (criminal prosecution of election officials who committed election fraud); *Iowa-Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239, 240 (1931) (addressing whether tax collectors violated the Fourteenth Amendment by collecting taxes unequally).  Plaintiffs rely on those same cases to argue that "[i]nformal conduct" qualifies as state action if taken "under color of state law."  Opp. 13-14.  But again, that argument fails to account for the fact that statements from individual members of Congress cannot turn private parties into state actors, whether the members are acting "under color of state law" or not.  *See, e.g.*, *ICAN*, 2022 WL 278386, at *5; *Daniels*, 2021 WL 1222166, at *6.  Plaintiffs' cases are irrelevant to this secondary argument as well.  Plaintiffs also note that many statements they challenge in this lawsuit "were made *ex cathedra*—on the floor of Congress or from the White House."  Opp. 13.  But it is unclear why the location of the statement matters.  What matters is that no individual member of Congress has the authority to single-handedly amend or repeal Section 230—the only potential adverse consequence to Meta that Plaintiffs mention in their opposition.  *Id.*

Plaintiffs' coercion theory also fails because they have not alleged that the government "is responsible for the specific conduct of which the plaintiff complains," *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)—here, Meta's suspension of Plaintiffs' specific accounts and removal of their specific posts.  Plaintiffs point out that the government does not have to call out "specific individuals" to trigger state action.  Opp. 7-8.  But that is beside the point, because Plaintiffs must still show that the government dictated the specific decision at issue in some way, and they cannot do so here.  *See Blum*, 457 U.S. at 1010 (no state action where government did not "dictate the decision to discharge or transfer in a particular case"); *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020) (no state action where the plaintiff "does not allege that the state government commanded a particular result in, or otherwise participated in, his specific case"); *Sutton v. Providence St. Joseph Med. Ctr.*,

192 F.3d 826, 843 (9th Cir. 1999) (no state action unless "the government directed a specific entity to take a specific (allegedly unconstitutional) action against a specific person").  Plaintiffs' own cases illustrate the point.  In *Mathis*, for example, the Ninth Circuit held that there could be state action only if the government's rule left "no deference … to decisionmaking by" the private party.  *Mathis v. Pac. Gas & Elec. Co.*, 891 F.2d 1429, 1434 (9th Cir. 1989).

Here, none of the named Plaintiffs point to any government action that dictated Meta's decision to suspend their specific accounts or remove their specific posts.  Plaintiffs contend that various members of Congress generally "targeted a distinct group of citizens" for censorship—"speakers who publicly supported [Mr. Trump's] views on election fraud or the COVID-19 pandemic" and "those who echoed his views."  Opp. 7-8.  But the statements cited in the Amended Complaint do not direct Meta to suspend those who echoed Mr. Trump's views or to remove their posts; they simply call for reforms to Section 230 or call on social media companies to do a better job preventing misinformation generally.  *See, e.g.*, Am. Compl. ¶ 71 ("This hearing will continue the Committee's work of holding online platforms accountable for the growing rise of misinformation and disinformation … We must begin the work of changing incentives driving social media companies to allow and even promote misinformation and disinformation."); *id.* ("But I do think that for the privilege of 230, there has to be a bigger sense of responsibility on it. And it is not out of the question that that could be removed."); Opp. 2-3 ("[I]t is time for Congress and this Committee to legislate and realign these companies' incentives to effectively deal with disinformation.").  The specific editorial choices about which accounts to suspend and which posts to remove were made by Meta, and "turn[ed] on … judgments made by" Meta according to Meta's Community Standards—not any "rule of conduct imposed by the State." *Blum*, 457 U.S. at 1008-09; *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (similar); *Assoc. of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1034-35 (D.C. Cir. 2022) ("[I]t is far less plausible that the companies' actions were a response to one legislator's inquiry than that they were a response to widespread societal concerns about online misinformation.").

As to Mr. Trump, Plaintiffs fail to allege any statement that is sufficiently coercive to turn Meta's private editorial decisions into state action.  While Plaintiffs point to two statements in the Amended Complaint that call on Meta to remove Mr. Trump's account, mere "call[s] for" private

1   parties to take certain action are not enough.  *Zhou v. Breed*, 2022 WL 135815, at *1 (9th Cir. Jan. 14,

2   2022) ("The mere fact that … public officials criticized a billboard and called for its removal, without

3   coercion or threat of government sanction, does not make that billboard's subsequent removal by a

4   private party state action.").  And even if those statements could be interpreted as threatening the

5   removal of Section 230 immunity for failing to suspend Mr. Trump's account, courts in this District

6   have squarely held that such "speculative" threats are not enough.  *Doe v. Google LLC*, 2021 WL

7   4864418, at *3 (N.D. Cal. Oct. 19, 2021), *appeal filed*, No. 21-16934 (9th Cir.).  Indeed, on the rare

8   occasion where courts have found state action based on pressure from government officials, the state

9   official with legal control over the private party's actions threatened to impose legal sanctions if the

10  private party did not comply.  *See Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d

11  1291, 1295 (9th Cir. 1987).  There is nothing of the sort here.

12        Plaintiffs' cases on this score are inapt.  Plaintiffs rely heavily on a series of cases from fifty

13  years ago in which the Supreme Court overturned criminal convictions of protestors who conducted

14  sit-ins at racially segregated restaurants.  Those cases have no relevance here.  Each involved an arrest

15  and criminal conviction—which is no doubt state action—and named government entities as

16  defendants.  *See Robinson v. Florida*, 378 U.S. 153, 154 (1964), *Lombard*, 373 U.S. 267, 268; *Peterson*

17  *v. City of Greenville*, 373 U.S. 244, 245 (1963).  None involved an attempt to hold a private party

18  liable for constitutional violations.

19        *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), *American Family Association, Inc. v. City*

20  *of San Francisco*, 277 F.3d 1114 (9th Cir. 2002), *Hammerhead Enterprises Inc. v. Brezenoff*, 707 F.2d

21  33 (2d Cir. 1983), and *Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007), are also off base.  Again, each

22  involved litigation against *government officials or entities*, not private parties.  Those cases stand for

23  the proposition that *the government* can violate the U.S. Constitution when it threatens to sanction a

24  private party for refusing to act on its behalf, such as by threatening prosecution.  They say nothing

25  about when pressure from a government official renders *private parties* liable under the First

26  Amendment.  As Meta explained in its opposition to Mr. Trump's preliminary injunction motion, *see*

27  PI Opp. 8 (Dkt. 158), the Ninth Circuit has squarely distinguished cases that seek to hold government

28  officials liable under the First Amendment for threatening to sanction a private party for its speech

1    and cases that seek to hold private parties liable under the First Amendment for actions taken because

2    of such threats.  *See Sutton*, 192 F.3d at 838-43.  Plaintiffs' cases have no relevance here.

3         **B.    Section 230 Does Not Transform Private Conduct Into State Action.**

4         Multiple courts have rejected Plaintiffs' theory that Section 230 converts private editorial

5    decisions into state action because Section 230 does not coerce anyone to do anything.  *See* MTD 8

6    (Dkt. 157) (collecting cases).  Plaintiffs nevertheless insist that Section 230 turned Meta's decisions

7    into state action because it encouraged Meta to censor them by insulating Meta from liability "for

8    engaging in content censorship."  Opp. 17.  But Section 230 does not encourage Meta to take content

9    down any more than it encourages Meta to leave content up.  Section 230's immunity provisions apply

10   either way—a point that Plaintiffs do not dispute.  And even if Section 230 "can in some sense be seen

11   as encouraging" Meta to suspend Plaintiffs' accounts and remove their posts, such "subtle

12   encouragement" is not enough to turn private parties into state actors.  *Sullivan*, 526 U.S. at 53.  Indeed,

13   the Ninth Circuit has explained that preemption alone does not turn private decisions into state action.

14   *See, e.g.*, *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 844-845 (9th Cir. 2017).[1]  And other courts

15   have squarely held that providing private parties with immunity from suit is insufficient, too.  *See*

16   *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) (explaining that "the act of

17   extending governmental tort liability and immunity rules to foster parents does not transform the

18   [foster parents] into State actors").  That makes sense.  Countless rules in our legal system provide

19   parties with protection from suit, and if that mere protection were enough to transform private conduct

20   into state action, then "private parties could face constitutional litigation whenever they seek to rely

21   on some state rule governing their interactions."  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937

22   (1982).  Plaintiffs do not dispute that is the logical result of their position; nor do they provide any

23   limiting principle to their proposed rule, which flouts the law in this and other Circuits.  *See, e.g.*,

24   *Roberts* 877 F.3d at 844-45; *Rayburn*, 241 F.3d at 1348.

25

26

27   ───────────────
     [1]   Plaintiffs try to distinguish *Roberts* because the "agreement to arbitrate was reached by private
         contract," Opp. 17, but here, too, Meta's editorial decisions were made by private actors enforcing
28       Meta's Terms of Service and Community Standards, which are also private contracts.

Plaintiffs' cases are not to the contrary.  *Skinner v. Railway Labor Executives' Association* held that the federal government "did more than adopt a passive position toward the underlying private conduct"—it expressed a "strong preference" for it.  489 U.S. 602, 615 (1989).  Here, by contrast, Section 230 is "passive"—it protects Meta from lawsuits regardless whether it removes Plaintiffs' accounts or posts or leaves them up.  *See Children's Health Defense v. Facebook Inc.* ("*CHD*"), 2021 WL 2662064, at *13-14 (N.D. Cal. June 29, 2021) (distinguishing *Skinner*), *appeal filed*, No. 21-16210 (9th Cir.); *Newman v. Google LLC*, 2021 WL 2633423, at *9-10 (N.D. Cal. June 25, 2021) (same); *Divino Grp. LLC v. Google LLC*, 2021 WL 51715, at *6 (N.D. Cal. Jan. 6, 2021) (same). *Railway Employees' Department v. Hanson* involved a First Amendment challenge to the Railway Labor Act, and the enactment of a statute is unquestionably state action.  351 U.S. 225, 238 (1956).  It has nothing to do with whether a federal preemption provision can turn *private conduct* into state action.  PI Opp. 9-10.  And *Reitman v. Mulkey* likewise involved an equal protection challenge to a California state law.  387 U.S. 369, 370 (1967).  Again, there was no state action problem there because the enactment of a state law is unquestionably state action.  None of Plaintiffs' cases have anything to say about whether Meta's editorial choices can be attributed to the government.

## C.    Plaintiffs' Joint Action Theory Fails As A Matter Of Law.

Plaintiffs appear to have abandoned their theory that Meta acted jointly with the Centers of Disease Control and Prevention ("CDC") to remove content related to COVID-19 because they make no mention of it in their opposition.  *See Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.").  That theory had no support to begin with because nothing in the Amended Complaint plausibly alleges any coordination between Meta and the CDC to suspend Plaintiffs' accounts or remove their posts—let alone that Meta and the government were "inextricably intertwined" in doing so.  *See* MTD 10-11.  And moreover, the vast majority of the challenged editorial decisions have nothing to do with COVID-19 in the first place.  *See id*.

Perhaps recognizing that problem, Plaintiffs pivot to arguing more generally that Meta acted jointly with "the government" to "censor President Trump and those who echoed his views."  Opp. 17.  That theory fails, too.  Plaintiffs seek to establish joint action by pointing to Mr. Zuckerberg's

testimony that Meta had "partnered with election officials" to remove or attach warnings to election-related misinformation. *Id.* But as multiple courts in this District have held, "simply alleging that Facebook and the [government] are 'working together' or 'partnering'" is not enough. *CHD*, 2021 WL 2662064, at *12; *see also ICAN*, 2022 WL 278386, at *4 (holding that "public statements indicating [an] intent to work with Congress" cannot demonstrate the "substantial degree of cooperative action" necessary to satisfy the joint action test); *O'Handley v. Padilla*, 2022 WL 93625, at *9-10 (N.D. Cal. Jan. 10, 2022) (allegation that government official flagged specific post for Twitter to remove was not enough to establish joint action), *appeal filed*, No. 22-15071 (9th Cir.). Likewise unavailing is Plaintiffs' attempt to establish joint action based on allegations that "[t]he government … overtly incentivized social media to coordinate the censorship of disfavored speech." Opp. 18. As courts in this District have squarely held, "statements by members of Congress urging Defendants to take action" cannot establish joint action. *ICAN*, 2022 WL 278386, at *4.[2]

## II. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED.

Plaintiffs argue they have standing to raise their declaratory judgment claim because Meta asserted Section 230 as a defense to Plaintiffs' state law claims. The Ninth Circuit has squarely rejected that argument. In *Lewis v. Google LLC*, the defendant also raised Section 230 as a defense to some of the plaintiffs' claims, and the Ninth Circuit held that the plaintiffs lacked standing to seek a declaratory judgment that Section 230 was unconstitutional. 851 F. App'x at 723. The *Lewis* Court found that, as here, the plaintiffs' alleged injuries "all arose from the actions of [] a private entity, as it enforced its own standards," not from any application of Section 230. *Id.* at 723-24. Plaintiffs' standing problems here are only made worse because it is "entirely speculative" that "Facebook … would voluntarily change course and permit Plaintiffs' censored content to stand were the [court] to declare § 230 unconstitutional," as Meta's removal decisions are also protected by the First Amendment. *Am. Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d 100, 106 (D.D.C. 2016), *aff'd*, 697 F. App'x 7 (D.C. Cir. 2017).

---

[2] Plaintiffs claim that the state action question is "necessarily fact-bound" and "ill-suited" to a motion to dismiss. Opp. 5. But numerous courts in this District (and others) have dismissed nearly identical claims at the motion-to-dismiss stage. *See* MTD 4-5 n.2 (collecting cases).

Plaintiffs point to the district court decision in *Lewis*, but that opinion does not help them.  The district court dismissed the plaintiff's claims for declaratory judgment for lack of standing.  *See Lewis v. Google LLC*, 461 F. Supp. 3d 938, 952-53 (N.D. Cal. 2020).  While the district court ultimately addressed Section 230's constitutionality, it did so only because it reached the defendant's argument that Section 230 barred the plaintiff's state law claims.  *Id.*  But the court explained that the mere fact that the defendant raised Section 230 as a defense to some of the plaintiff's claims did not give the plaintiff standing to "bring an independent claim to challenge the constitutionality of Section 230 of the CDA."  *Id.* at 952.  Just so here.  *See also DaimlerChrysler Corp v. Cuno*, 547 U.S. 332, 352-53 (2006) (explaining that "a plaintiff must demonstrate standing for each claim he seeks to press" and that "standing is not dispensed in gross").

Alternatively, the Court could dismiss the claim on discretionary grounds under the Declaratory Judgment Act.  Courts have "unique and substantial discretion" under the Act "in deciding whether to declare the rights of litigants."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007).  Courts in this District have repeatedly declined to exercise that discretion where (as here) plaintiffs seek to use "the Declaratory Judgment Act to anticipate an affirmative defense" like § 230.  *See, e.g.*, *Newman*, 2021 WL 2633423, at *13-14; *Divino*, 2021 WL 51715, at *11.  Plaintiffs do not even try to explain why a different approach is required here.

On the merits, Section 230 is plainly constitutional, as the Ninth Circuit (and every court to have considered the issue) has held.  *See Lewis*, 851 F. App'x at 724 n.2; *Green v. Am. Online, Inc.*, 318 F.3d 465, 472 (3d Cir. 2003); *Winter v. Facebook, Inc.*, 2021 WL 5446733, at *5 (E.D. Mo. Nov. 22, 2021).  Plaintiffs appear to abandon their allegation that Section 230 is facially unconstitutional, choosing instead to stand on their argument that Section 230 violates the First Amendment as applied in this case because it encouraged Meta "to conduct an unconstitutional regime of prior restraint against specific groups or people."  Opp. to U.S. Br. 4-5 (Dkt. 163).  But even assuming that encouraging private parties to restrict speech raises First Amendment concerns, Section 230 did not encourage Meta to restrict Plaintiffs' speech, as Section 230's protections apply regardless of whether Meta publishes content or removes it.  *See, e.g.*, *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  And in all events, Section 230 is plainly constitutional where (as here) it simply protects social

media services from liability for editorial judgments that the First Amendment itself already protects. MTD 13.[3]

Plaintiffs claim that *Denver Area Educational Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727 (1996), compels a different result, *see* Opp. to U.S. Br. 4-5, but that is not so. There, a splintered Court struck down on First Amendment grounds a portion of the Cable Television Consumer Protection and Competition Act that permitted cable operators to restrict "offensive" programming on public access channels. *Denver Area*, 518 U.S. at 760-67 (plurality op.); *id.* at 806-07 (Kennedy, J., concurring in part and dissenting in part). But that decision turned on the fact that, in the unique context of cable programming *on public access channels*, cable operators have little to no First Amendment right to exercise editorial judgment over programming. *Id.* at 761 (plurality op.) (explaining that such a right was "nonexistent, or at least much diminished"); *id.* at 800 (Kennedy, J.) (similar). Indeed, at the same time the Supreme Court struck down the public access channel provision, it upheld a provision of the Act that permitted cable operators to restrict "offensive" programming on *leased access channels* (*i.e.*, channels that were not open to public access), mainly because cable operators *do* have a First Amendment right to exercise editorial discretion over programming in that context. *Id.* at 743 (plurality op.); *id.* at 838 (Thomas, J., concurring in part and dissenting in part). Here, of course, courts have repeatedly held that the First Amendment protects a private online service's ability to exercise editorial judgment over the speech and speakers on its own private forum. MTD 3-4 (collecting cases).

## III.   PLAINTIFFS' FDUPTA CLAIM SHOULD BE DISMISSED.

Plaintiffs' claim under the FDUTPA fails at the outset because Meta's Terms of Service provides that "the laws of the State of California … govern" their claims. Order, ECF No. 108 at 2. Plaintiffs do not dispute that the choice-of-law provision applies to their claim or that California has a "substantial relationship to the parties or a reasonable basis to enforce its choice of law." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018). Instead, they argue that the Court

---

[3]   Plaintiffs claim (without citing anything) that their argument "raises a purely merits issue that should not be adjudicated on an undeveloped record." Opp. 18. But constitutional challenges, including as-applied challenges, may be dismissed at the motion to dismiss stage just like any other claim. *See, e.g.*, *Preminger v. Peake*, 552 F.3d 757, 761 (9th Cir. 2008).

should not enforce the clause because California law conflicts with Florida policy. Opp. 18-19. But to win on that argument, Plaintiffs must show that California law is "contrary to a fundamental policy" of Florida *and* that Florida "has a materially greater interest in the determination of the particular issue." *Williams*, 384 F. Supp. 3d at 1056. Plaintiffs do not even try to demonstrate the second prong. As to the first prong, Plaintiffs point out that California requires plaintiffs to establish financial injury to seek injunctive relief while Florida law does not. Opp. 18-19. But "[d]ifferences in the particulars of the consumer statutes are not enough" to establish "fundamentally different policy." *Williams*, 384 F. Supp. 3d at 1056. Courts in this District have consistently enforced Meta's choice of law provision despite differences in "rights and remedies" in consumer protection statutes. *See id.* (enforcing Meta's choice-of-law provision even though New York consumer protection law provided "a unique remedy" that California consumer protection law did not); *see also Palomino v. Facebook, Inc.*, 2017 WL 76901, at *4 (N.D. Cal. Jan. 9, 2017) (enforcing Meta's choice-of-law provision even though New Jersey consumer protection law provided "different rights and remedies" than California consumer protection law). Just as in those cases, "[t]here is no indication California's robust consumer protection law is contrary to [Florida's] in their policy aims. Each broadly protects consumers from the deceptive practices alleged against Facebook in this case." *Williams*, 384 F. Supp. 3d at 1056.

Even if this Court declines to enforce Meta's choice-of-law provision, it should dismiss Plaintiffs' FDUTPA claim because the First Amendment bars the relief they seek—an injunction "restoring the Plaintiff and the Putative Class Members access to their platform," compelling Meta to "honor" its own policies, and "imposing a monitor to ensure Defendants' compliance with this Court's order." Am. Compl. ¶ 232. Plaintiffs do not even try to explain how that relief complies with the First Amendment. *See* Opp. 18-19.

On the merits, Plaintiffs appear to abandon any claim that Meta made affirmative misrepresentations. *See* MTD 15. Instead, they claim that Meta deceived users by "failing to disclose that they make content removal decisions based on subjective and political criteria." Opp. 19. That theory fails because Plaintiffs do not plausibly allege (let alone with the particularity that Rule 9(b)

requires) that Meta does anything of the sort.[4]   While Plaintiffs purport to point to examples of decisions that they consider inconsistent, *id*., a reasonable user would plainly understand that Meta often makes difficult judgment calls about whether content violates its standards.  *See* MTD 15. Plaintiffs may disagree with those decisions or find them inconsistent.  But that does not mean that Meta makes its decisions based on "subjective and political criteria."  Opp. 19; *see Muslim Advocates v. Facebook, Inc.*, No. 2021 CA 001114 B (D.C. Sup. Ct. Feb. 16, 2022) (slip op. 9).

## IV.    PLAINTIFFS' CLAIM UNDER SENATE BILL 7072 SHOULD BE DISMISSED.

Plaintiffs appear to concede that Senate Bill 7072 cannot be applied retroactively and that they therefore have no basis to sue based on Meta's removal of their own posts and suspension of their own accounts.  Instead, they claim to challenge allegedly inconsistent decisions against other unnamed individuals after the law took effect.  *Id*.  But Plaintiffs cannot save their claims by purporting to stand in the shoes of other people, as they lack Article III standing to pursue claims based on editorial decisions that do not injure them.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (explaining that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").  And even if they had standing to assert claims based on editorial decisions against other individuals, they do not identify any example of an inconsistent decision after Senate Bill 7072's enactment.  At most, they allege that "Defendants have engaged in this activity since July 1, 2021." Am. Compl. ¶ 238.  But conclusory allegations like that one are insufficient to survive a motion to dismiss.  *See Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013).

---

[4]   Plaintiffs contend that Rule 9(b) does not apply because "FDUTPA is broader than the fraud doctrine."  Opp. 19.  While it is true that Rule 9(b) does not apply to all alleged violations of FDUTPA, courts have held that Rule 9(b) applies to claims that (like Plaintiffs') allege "deception."  *See, e.g.*, *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1381 (S.D. Fla. 2015).

Even if Plaintiffs could get around those problems, Senate Bill 7072 is plainly unconstitutional. Plaintiffs argue that the First Amendment does not apply to Meta's editorial decisions because Meta does not "curat[e] an editorial message like that of a newspaper." PI Reply 8 (Dkt. 160).[5]  But the Supreme Court has rejected that argument.  In *Hurley*, the parade organizers were "rather lenient in admitting participants." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995).  Yet the Court squarely held that "a private speaker does not forfeit constitutional protection simply by combining multifarious voices, or by failing to edit their themes to isolate an exact message as the exclusive subject matter of the speech." *Id.* at 569-70.  After all, whether to be highly selective, somewhat selective, or open to all is itself an exercise of editorial judgment that conveys a message about the speaker and its values.  That is why courts in this District and others have squarely held that the First Amendment protects an online platform's decisions about what content to leave up and what to take down.  *O'Handley*, 2022 WL 93625, at *14-15; *see also NetChoice, LLC v. Moody*, 2021 WL 2690876, at *9 (N.D. Fla. June 30, 2021)*, appeal filed*, No. 21-12355 (11th Cir.); *NetChoice, LLC v. Paxton*, 2021 WL 5755120, at *9-10 (W.D. Tex. Dec. 1, 2021), *appeal filed*, No. 21-51178 (5th Cir.).

Plaintiffs try to distinguish those cases because they purportedly involved expressive editorial judgments like "promot[ing] a post, rank[ing] search results, plac[ing] advertisements, or the like," while this case involves "hosting of third-party content." PI Reply 9.  Even if that were an accurate characterization of those cases (and it is not), decisions about what accounts and content to leave up and what to take down are expressive, too.  As a court in this District recently explained: "a platform's decision *to publish or not publish* particular [content] says something about what the platform represents." *O'Handley*, 2022 WL 93625, at *14-15 (emphasis added); *see also Paxton*, 2021 WL 5755120, at *8 (explaining that "social media platforms … curate both users and content to convey a message about the type of community the platform seeks to foster and, as such, exercise editorial discretion over their platform's content").  Plaintiffs suggest that the First Amendment does not apply because Meta does not face "space" or "cost" constraints like newspapers do.  But Supreme Court

---

[5]  In their opposition brief, Plaintiffs refer to arguments in Mr. Trump's reply in support of his motion for preliminary injunction, *see* Opp. 20 (citing PI Reply 8-10), which is why Meta addresses those arguments here.

squarely rejected that argument in *Tornillo*, holding that the law's "intrusion into the function of editors" failed to "clear the barriers of the First Amendment" "[e]ven if a newspaper would face no additional costs to comply … and would not be forced to forgo publication of news or opinion by the inclusion of a reply." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974)

Similarly unavailing is Plaintiffs' argument that Meta "can address concerns that content they carry might represent their opinions by disclaimers." PI Reply 9 n.13. Contrary to Plaintiffs' suggestion, First Amendment protections do not turn on the risk that some viewers will attribute third-party speech to Meta. *See, e.g.*, *Wooley v. Maynard*, 430 U.S. 705 (1977). For example, the compelled speech in *Wooley* was unconstitutional even though every New Hampshire resident understood that the state's slogan on its license plate was mandatory and not the deliberately chosen expression of every driver. Likewise, there was no hint that reader confusion mattered in *Tornillo*, as no reasonable observer would have confused a political candidate's right-to-reply column as the newspaper itself doing an about-face. But even setting that aside, the possibility of disclaiming compelled speech does not eliminate the First Amendment problem. The prospect that covered providers may feel obligated to explain away speech that they are compelled to carry only exacerbates the constitutional difficulty. "Because the government cannot compel speech, it also cannot 'require speakers to affirm in one breath that which they deny in the next.'" *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S.Ct. 1719, 1745 (2018) (Thomas, J., concurring in part and concurring in the judgment) (quoting *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal*, 475 U.S. 1, 16 (1986)). Indeed, telling a speaker to "dissociate" itself from forced speech by "simply post[ing] a disclaimer" would "justify *any* law compelling speech." *Id.*

Finally, Plaintiffs argue that Meta is entitled to lesser First Amendment protection because it is a common carrier. But "social media platforms are not common carriers." *Paxton*, 2021 WL 5755120, at *8. As Plaintiffs appear to acknowledge (*see* PI Reply 10; Opp. to U.S. Br. 2), to be a common carrier, a company must "serve the public indiscriminately and not 'make individualized decisions, in particular cases, whether and on what terms to deal.'" *Am. Orient Express Ry. Co., LLC v. STB*, 484 F.3d 554, 557 (D.C. Cir. 2007). Meta plainly does not qualify, as it "routinely manage[s] … content, allowing most, banning some, arranging content in ways intended to make it

more useful or desirable for users." *Moody*, 2021 WL 2690876, at *7; *see also U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 392 (D.C. Cir. 2017) (Srinivasan, J., concurring in denial of rehearing en banc) ("[W]eb platforms such as Facebook, Google, Twitter, and YouTube … are not considered common carriers that hold themselves out as affording neutral, indiscriminate access to their platform without any editorial filtering.").

## V.   SECTION 230 ALTERNATIVELY BARS PLAINTIFFS' STATE LAW CLAIMS.

Although the Court need not reach the issue, Plaintiffs' state law claims fail for the independent reason that they are barred by Section 230.  Plaintiffs do not deny that Section 230 bars claims that seek to hold Meta liable for "exclud[ing] material that third parties seek to post online."  Opp. 20.  Instead, they insist that their claims do not involve "reviewing, editing, and deciding whether to publish" third-party content.  *Id.*  That argument is squarely at odds with the content of Plaintiffs' complaint.  The entire point of their state law claims is to hold Meta liable for removing their accounts and their content while failing to remove other similar accounts and content.  *See* Am. Compl. ¶¶ 221, 237.  Their requested relief—an injunction restoring their accounts and their content to Facebook and imposing a federal monitor to tell Meta how to exercise its editorial judgment—underscores that point.[6]

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

---

[6]   Plaintiffs argue that Section 230 does not apply to "political speech," Opp. to U.S. Br. 3-4, but as another court in this District put it, "[i]mmunity under Section 230 does not contain a political speech exception."  *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1120 (N.D. Cal. 2020).

1

Dated: February 28, 2022

*/s/ Ashley E. Littlefield*

2

Ashley E. Littlefield (SBN 281027)
KIRKLAND & ELLIS LLP

3

555 California Street
San Francisco, CA 94104

4

Tel: (415) 439-1483 / Fax: (415) 439-1500

5

ashley.littlefield@kirkland.com

6

Craig S. Primis, P.C. (admitted *pro hac vice*)
K. Winn Allen, P.C. (admitted *pro hac vice*)

7

Ronald K. Anguas (admitted *pro hac vice*)
Kate H. Epstein (admitted *pro hac vice*)

8

James Y. Xi (admitted *pro hac vice*)
KIRKLAND & ELLIS, LLP

9

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

10

Tel: (202) 389-5000 / Fax: (202) 389-5200

11

craig.primis@kirkland.com
winn.allen@kirkland.com

12

ronald.anguas@kirkland.com
kate.epstein@kirkland.com

13

james.xi@kirkland.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2       The undersigned hereby certifies that on the 28th day of February 2022, the foregoing was

3   electronically transmitted to the Clerk of Court using the CM/ECF system, which will transmit

4   notification of such filing to all registered participants.

5                                                   */s/ Ashley E. Littlefield*

6                                                   Ashley E. Littlefield

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28